IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN D. MORO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No.: 3:02-cv-914-MJR |
| ) | |
| GREGORY S. LAMBERT, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to Magistrate Judge Donald G. Wilkerson by District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Amended Petition for a Writ of Habeas Corpus filed by the Petitioner, John D. Moro, on November 17, 2004 (Doc. 30). For the reasons set forth below, it is **RECOMMENDED** that the Petition be **DENIED**, that this matter be **DISMISSED,** and that the Court adopt the following findings of fact and conclusions of law:

FINDINGS OF FACT

**Underlying Criminal Conviction**

The Petitioner, John D. Moro, was convicted after a jury trial for armed violence (Count II of the indictment), the unlawful use of a weapon (Count IV), and aggravated unlawful restraint (Count V) on April 3, 1996. He was sentenced to a total of 30 years imprisonment. The charges against Moro stemmed from an incident on August 25, 1995. On that date, Moro entered his seven-year-old daughter's school with a .38 caliber gun, brandished the weapon in front of her teacher and a classroom full of children, and fled with his daughter to Washington state. Moro was arrested on September 12, 1995 and returned to Illinois on September 28, 1995. After a jury trial, in which he testified, Moro was sentenced to 25 years and 2 years, to run concurrently, on

Counts II and IV, respectively, and 5 years, to run consecutively, on Count V.  Moro currently is housed at the Big Muddy River Correctional Center.

**Direct Appeal**

Moro filed a direct appeal of his sentence and conviction on June 17, 1996.  He raised two issues: a violation of the Illinois Speedy Trial Act and that his sentence for Count II was disproportionate to the seriousness of the crime (Respondent's Ex. A at p. 3).  After considering Moro's arguments on the merits, the Illinois Appellate Court affirmed Moro's conviction and sentence on September 17, 1997 (Resp. Ex. B).

In his *pro se* appeal to the Illinois Supreme Court, filed on October 22, 1997, Moro argued that the Appellate Court erred in its consideration of his speedy trial argument (Resp. Ex. C).  He did not raise the disproportionate sentence argument.  The Illinois Supreme Court denied leave to appeal on February 4, 1998.  People v. Moro, 690 N.E.2d 1385 (table) (Ill. 1998).  There is no indication in the record that Moro appealed this decision to the United States Supreme Court.

**State Post-Conviction Relief**

**First and Second State Petitions**

Moro filed his first petition for post-conviction relief before the Jackson County Circuit Court on July 30, 1998 (Resp. Ex. E).  He raised six issues – only two of which are relevant to his petition before this Court.  He argued that his trial counsel was ineffective for failing to object to the shackles, handcuffs, and shocking device that Moro wore before the jury (Resp. Ex. E at p. 2).  Specifically, he states that he was led before the jury pool in handcuffs and shackles and that he was forced to wear a shocking device around his waist during trial (Resp. Ex. E at pp.

21-23). He states that trial counsel failed to object to these things despite Moro asking her to object. The next relevant argument is that his 14th Amendment rights were violated when he was not brought to trial within the 120 day period prescribed by the Illinois Speedy Trial Act (Resp. Ex. E at p. 3). In fleshing out this argument, Moro also asserted that trial counsel was ineffective for failing to properly argue his speedy trial claim (Resp. Ex. E at pp. 31-37). The Trial Court denied this first petition in a brief order dated July 31, 1998 (Resp. Ex. F).

Moro filed a second petition for post-conviction relief with the Trial Court on April 5, 1999 (Resp. Ex. G). In this petition he raised three arguments, two of which are relevant here. These arguments again center on the speedy trial issue. It appears that Moro filed this second petition in order to highlight recent case authority including People v. Ladd, 691 N.E.2d 896 (Ill. App. Ct. 1998). The Trial Court denied this second petition on April 6, 1999 (Resp. Ex. H).

Moro filed briefs appealing both of these rulings on January 7, 1999 and August 17, 1999, respectively (Resp. Exs. I and J). In these briefs, Moro raised a number of arguments, only a few of which are relevant here. First, he argued that the Trial Court erred in denying his claim that his speedy trial rights were violated (Resp. Ex. I at p. i). Second, he argued that the Trial Court erred in denying his claim of ineffective assistance of trial counsel who failed to object to his shackling, handcuffing, and wearing a shocking device before the jury (Resp. Ex. I at p. ii). Third, he argued that the Trial Court erred in failing to take into account the new case law he submitted regarding the speedy trial issue (Resp. Ex. J at p. 2). And, fourth, the Trial Court erred in failing to find that he was treated differently than a similarly situated defendant (i.e. Leroy Ladd) (Resp. Ex. J at p. 2). Both of these appeals were consolidated and considered by the Illinois Appellate Court in an order dated February 13, 2001.

With respect to Moro's speedy trial arguments, the Appellate Court found that they were subject to *res judicata* as these arguments were considered on direct appeal (Resp. Ex. L at pp. 11-12). The Appellate Court also noted that his speedy trial claim hinged on state law and not Constitutional law (Resp. Ex. L at p. 12). As to the second issue, the Appellate Court held that trial counsel was not ineffective because the evidence revealed that Moro never wore shackles or handcuffs before the jury at his trial and because there was no evidence that a juror saw the shocking device – therefore there was no prejudice (Resp. Ex. L at pp. 6-8). Finally, the Appellate Court stated that Moro's reliance on Ladd (with respect to his disparate treatment claim) was "misplaced" (Resp. Ex. L at p. 12). As such, the Appellate Court affirmed the Trial Court's holdings.

Moro filed his appeal with the Illinois Supreme Court on April 12, 2001 (Resp. Ex. M). Moro again raised multiple grounds of relief, only three of which are relevant. He first asserted that the Appellate Court erred in failing to find that he was treated different than Leroy Ladd (Resp. Ex. M at p. 2). He next argued that the Appellate Court erred in failing to find that his rights were violated because the jury saw him wearing handcuffs, shackles, and a shocking device (Resp. Ex. M at p. 3). His final relevant argument was that direct appellate counsel was ineffective for failing to adequately argue his speedy trial issue (Resp. Ex. M at pp. 3-4). This petition was denied by the Illinois Supreme Court on June 6, 2001. People v. Moro, 754 N.E.2d 1290 (table) (Ill. 2001) (Resp. Ex. N). A petition for a writ of certiorari was denied by the United States Supreme Court on November 26, 2001. Moro v. Illinois, 534 U.S. 1044 (2001) (Resp. Ex. O).

**Third State Petition**

Moro states that he filed a third petition for post-conviction relief with the Jackson County Circuit Court on August 5, 1999 (Resp. Ex. P; Petition at p. 8). He raised one ground of relief: that the Illinois act under which he was convicted violates the "single subject rule of the Illinois Constitution" (Resp. Ex. P; Petition at p. 8). The parties disagree as to whether this petition was actually filed. However, both parties agree that no action was taken by the state courts on this petition.

**Fourth State Petition**

For his fourth challenge, Moro filed a petition for a writ of habeas corpus on March 29, 2000 and generally alleged that the state courts were without subject matter jurisdiction to try, convict, and sentence him (Resp. Ex. S). This petition was dismissed on May 16, 2000 by the Trial Court (Resp. Ex. T). Moro appealed this result on July 7, 2000[1] and raised the same arguments, among others (Resp. Ex. U; Pet. Ex. H at p. 1). The Appellate Court affirmed the dismissal by an order dated December 11, 2001 (Resp. Ex. V). The Court held that Moro's arguments concerning subject matter jurisdiction were vague and that he otherwise failed to present an appropriate ground for habeas relief (Resp. Ex. V at p. 4). Moro's subsequent appeal to the Illinois Supreme Court, on the same grounds, was denied on April 3, 2002. Moro v.Holmes, 770 N.E.2d 220 (table) (Ill. 2002). On October 7, 2002, his petition for a writ of certiorari was denied by the United States Supreme Court. Moro v. Holmes, 537 U.S. 842 (2002).

---

[1] This date is provided by Moro in his Exhibit H. However, the Respondent's Exhibit U, which is the actual brief filed, contains a date stamp that is unreadable and that may indicate that the brief was filed on the 4th of some month.

**Petition pursuant to §2254**

Moro filed his petition with this Court on August 1, 2002. The petition was dismissed with prejudice on October 17, 2002 (Doc. 3). However, pursuant to a mandate issued by the Seventh Circuit Court of Appeals, the dismissal was vacated and this matter remanded (Doc. 22). Thereafter, Moro filed an amended petition for a writ of habeas corpus on November 17, 2004 (Doc. 30). The Respondent filed his answer on February 7, 2005 (Doc. 46). While Moro was given additional time to file a response in support of his petition, no such response was filed by the deadline (Doc. 48).

In his amended petition, Moro raises three grounds for relief:

> 1. His 6th Amendment Right to confer with trial counsel and assist in his defense was violated when he was forced to wear a stun belt during trial.
>
> 2. Ineffective assistance of direct appellate counsel who failed to cite to relevant case authority related to the "intention" of the Trial Court in an order which excluded a number a days from the 120 day limit imposed by the Illinois Speedy Trial Act. Specifically, Moro claims that counsel should have cited to case law which held that the Appellate Court must look no further than an unambiguous Trial Court order when interpreting that order.
>
> 3. His 14th Amendment equal protection rights were violated when the Appellate Court treated a similarly situated defendant, Leroy Ladd, differently than Moro in adjudicating his speedy trial issue.
>
> (Petition at pp. 9-11; Petitioner's Exs. I, J, and K)

In his lengthy answer, the Respondent generally argues that each of Moro's claims have been procedurally defaulted and that the third argument is without merit.

**CONCLUSIONS OF LAW**

**28 U.S.C. §2254**

28 U.S.C. §2254(a) provides that: ". . . a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  See Canaan v. McBride, 395 F.3d 376, 382-382 (7th Cir. 2005);  Newell v. Hanks, 335 F.3d 629, 631 (7th Cir. 2003).  Review under §2254(a) is *de novo* and does not necessarily implicate the deferential standard that generally applies to habeas petitions pursuant the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), as codified in 28 U.S.C. §2254(d).  Newell, 335 F.3d at 631-632.

Any claim adjudicated on the merits in a state court proceeding is governed by 28 U.S.C. §2254(d).  Canaan, 395 F.3d at 382.  This code section provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) implicates two methods by which a writ can be granted based on an error by the state court.  First, the state court could reach a legal conclusion that is opposite to a legal

conclusion announced by the Supreme Court.  Owens v. Frank, 394 F.3d 490, 496-497 (7th Cir. 2005).  Second, the state court could identify the correct legal rule but unreasonably apply it to the facts of the case or unreasonably extend a legal principle.  Owens, 394 F.3d at 496-497.  As the Supreme Court has stated:

> We have made clear that the 'unreasonable application' prong of §2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.  In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'  In order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'
>
> Wiggins v. Smith, 539 U.S. 510, 520-521(2003) (citations omitted).

See also Owens, 394 F.3d at 496-497.  In order to grant a Petition based on this section, the state court's decision must be both unreasonable and incorrect.  Owens, 394 F.3d at 497.  The burden is on the Petitioner to show that he is entitled to relief.  Harding v. Sternes, 380 F.3d 1034, 1043 (7th Cir. 2004).

Section 2254(d)(2) involves the "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  In considering this section, this court presumes that the state court correctly determined the factual issues; and, the petitioner has the burden to show that the state court erred by clear and convincing evidence.  28 U.S.C. §2254(e)(1); See also Benefiel v. Davis, 357 F.3d 655, 659 (7th Cir. 2004).

**Procedural Default**

When a state court addresses a question of federal law and bases its decision on independent and adequate state law grounds, that are either substantive or procedural, the federal courts generally will not disturb such a finding on habeas review. Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."); Miranda v. Leibach, 394 F.3d 984, 391-392 (7th Cir. 2005) ("A state ground is deemed independent for this purpose only if the state court actually relied on a state rule sufficient to justify its decision . . . . The adequacy of the state ground is a question of federal law . . . ; the ground is considered adequate only if the state court applies the rule in a consistent and principled way." (citations and quotation marks omitted)). This rule recognizes the importance of "finality, comity, and the orderly administration of justice" and the reluctance of the federal courts to rule contrary to the state court on an issue of state law. See, Dretke v. Haley, 541 U.S. 386, 388 (2004); Edwards v. Carpenter, 529 U.S. 446, 451(2000) ("The procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism,' . . . and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack . . . ." (citations omitted)). The object is to allow the state courts the opportunity to address the Petitioner's claims in the first instance. Edwards, 529 U.S. at 451.

Regardless of the which §2254 provision the Petitioner proceeds under, procedural default occurs when "a Petitioner does not adequately present a claim to the state court" and there is no showing of "cause and prejudice for the default or . . . that a failure to grant him relief

would work a fundamental miscarriage of justice." Richardson v. Briley, 401 F.3d 794, 801 (7th Cir. 2005) (citation omitted); Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir. 2005) (fundamental miscarriage equals "the conviction of an innocent person"); See also Edwards, 529 U.S. at 451-452. A Petitioner must "fairly present" his claim before the state court in order to allow the state the opportunity to correct any Constitutional violations. Sanders v. Cotton, 398 F.3d 572, 581 (7th Cir. 2005) (citations omitted). The fair presentment requirement also means that the Petitioner must "assert his claims through one complete round of state court review," Bintz v. Bertrand, 403 F.3d 859, 863 (7th Cir. 2005), and "put forward operative facts and controlling legal principles." Sanders, 398 F.3d at 580. The failure to present a claim before the state courts results in a waiver of that claim before this court. Thus, "[a] habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." Bintz, 403 F.3d at 863 (quotation marks and citation omitted). The burden is upon the Respondent to show that the Petitioner has procedurally defaulted his claims by either waiving such claims or failing to exhaust such claims.

**Claim 1: Moro's 6th Amendment Right to confer with trial counsel and assist in his defense was violated when he was forced to wear a stun belt during trial**

As indicated above, Moro's first argument is that his 6th Amendment rights were violated when he was compelled to wear a stun belt at trial without a finding on the record that he was a risk or otherwise disruptive. While Moro states that his trial counsel failed to object at trial, he does not otherwise argue that trial counsel was ineffective – rather, he indicates that the Trial Court erred in failing to hold a hearing regarding the stun belt. Further, he states that his ability to confer with his attorney and participate in his defense was compromised because he was

compelled to wear a device that prevented him from acting freely.

These claims were not raised in Moro's direct appeal briefs nor were they raised by the Illinois Courts on direct appeal. These claims also were not raised in Moro's many post-conviction petitions before the state courts. Moro does, however, assert that there issues were raised before the United States Supreme Court in a brief in support of a petition for a writ of certiorari filed on August 16, 2001 (Pet. Ex. H at p. 3)[2]. The Respondent has not provided this brief; however, Moro asserts that 8 issues were raised relating to the shocking device including the claims raised here. Even if these issues were raised before the United States Supreme Court, it is clear that these matters were not fairly presented to the state courts nor did these issues go through one complete round of review. See Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999) ("A petitioner presents her claims fully simply by pursuing all available avenues of relief provided by the state before turning to the federal courts."). As such, Moro has procedurally defaulted these claims by not presenting them to the state courts.

As the Respondent notes, Moro did raise a claim that his trial counsel was ineffective for failing to raise the issue of his shackling, handcuffing, and wearing of a shocking device at trial. A claim of ineffective assistance of counsel pursuant to the holding in Strickland v. Washington, 466 U.S. 668 (1984), is vastly different from the underlying issue that forms the basis of the ineffectiveness claim. See Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004) (stating that "an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is

---

[2] Moro's Exhibit H is entitled "other remedies." Pages 1 and 4 refer to his habeas corpus petition before the state courts originally filed on March 29, 2000. However, pages 2 and 3 appear to be out of place. These pages refer to Moro's appeals of his post-conviction petitions as identified on pages 2-4 of this Report and Recommendation.

a claim separate and independent of those issues"). An analysis of an ineffectiveness claim necessarily involves scrutiny of counsel's performance; whereas an analysis of the underlying claim has nothing to do with counsel's performance. Merely because Moro raised this issue in the context of an ineffectiveness claim does not mean that he has fairly presented this issue to the state courts. In addition, Moro has not presented his ineffectiveness claim before this court because his statements that trial counsel failed to object before the Trial Court are nothing more than passing statements: he cites to no case authority or operative facts that would place this issue squarely before this court. There has been no showing of cause and prejudice or a fundamental miscarriage of justice. As such, he has procedurally defaulted this claim.

**Claim 2: Ineffective assistance of direct appellate counsel who failed to cite to relevant case authority related to the "intention" of the Trial Court in an order which excluded a number a days from the 120 day limit imposed by the Illinois Speedy Trial Act.**

Moro asserts that appellate counsel was ineffective for failing to cite to case authority related to the manner in which a reviewing court should consider the orders of lower courts. Moro claims that appellate counsel should have cited to cases that stand for the proposition that if a lower court's order is unambiguous, a reviewing court need look no further into the record or other statements made by the lower court. Moro states that if counsel had cited to such case authority, the Illinois courts would not have relied on extraneous statements by the Trial Court and would have found that his speedy trial rights were violated. Specifically, Moro notes that the Trial Court's order referred to a 60 day delay that was to be charged to Moro and excluded from the 120 day time limit. However, extraneous statements by the Trial Court indicated an open-ended delay from 90 to 120 days. Ultimately, the Trial Court charged Moro with an 81 day delay notwithstanding its previous order. Moro asserts that he was prejudiced by the error of

12

appellate counsel because if he was only charged 60 days, he would not have been tried within the 120 days required by the Speedy Trial Act.

This issue has similarly been defaulted. Moro did not raise this claim on direct appeal of his conviction. In his first post-conviction petition, Moro asserted that his 14th Amendment rights were violated when his speedy trial rights were violated (Resp. Ex. E at p. 3). He specifically argued that the Trial Court erred in charging him with the delay in the trial and that he was treated differently than similarly situated defendants. (Resp. Ex. E at pp. 31-37). He also argued that trial counsel was ineffective because she made an "inadequate argument" and that the Appellate Court should have looked no further than the Trial Court's order in determining the Trial Court's intent (Resp. Ex. E at pp. 31, 33). Moro did not, however, assert anywhere in his brief that *appellate* counsel was ineffective for failing to present appropriate case authority.[3] Moro's second post-conviction petition reasserted his 14th Amendment speedy trial issue and, besides citing to new case authority, did not expand his argument to include a claim that appellate counsel was ineffective (Resp. Ex. G). Finally, neither his third nor fourth state post-conviction petitions mention this issue. As such, Moro has procedurally defaulted this claim.

**Claim 3: Moro's 14th Amendment equal protection rights were violated when the Appellate Court treated a similarly situated defendant, Leroy Ladd, differently than Moro in adjudicating his speedy trial issue.**

The Illinois Constitution provides for a "speedy public trial" for all those accused of a crime. ILL. CONST. art. 1, §8. Illinois' Speedy Trial Act further provides for a 120 day window from the point a person is taken into custody until trial "unless delay is occasioned by the

---

[3] Moro did, however, assert that appellate counsel was ineffective in a number of unrelated ways.

defendant." 725 ILL. COMP. STAT. 5/103-5(a).  In Ladd, the Illinois Appellate Court had occasion to evaluate the 191 days between Leroy Ladd's initial incarceration and trial in light of the requirements of the statute.  During the underlying criminal conviction, the Trial Court had set a hearing on Ladd's motion to dismiss.  However, on the date of the hearing, the record was devoid of any minutes or any ruling on the motion.  As such, the motion languished until trial, when it was resolved, and the intervening time was charged to the Defendant.  Thus, the Trial Court found that the Speedy Trial Act was not violated because it was tolled during the pendency of the Defendant's motion to dismiss.

In finding that the Speedy Trial Act was violated, the Appellate Court stated that "[w]hile the burden of proof rests with the defendant to establish a violation of the 120-day rule, delay cannot be attributed to defendant where the record is silent."  Ladd, 691 N.E.2d at 902.  The Court held that by setting the motion to dismiss for a hearing, the Trial Court should have resolved the motion on the date of the hearing and the delay, even if occasioned by the court, could not count against Ladd.  In comparing the Ladd case to his, Moro argues that the record in his case was similarly "silent" and that his case should have been resolved in a manner similar to Ladd.  As such, Moro asserts that his equal protection rights were violated

This claim was raised in Moro's direct appeal and second petition for post-conviction relief and went through one complete round of review.   As the Illinois Supreme Court denied leave to appeal, a final decision on this issue was rendered by the Illinois Appellate Court on February 13, 2001 (Resp. Ex. L).   In finding against Moro, the Appellate Court indicated that Moro's speedy trial issue was distinguishable from the issue raised by Ladd: in Ladd's case, the record was silent and in Moro's case the record was not silent as was explained in the Appellate

Court's consideration of Moro's argument on direct appeal (issued on September 17, 1997) (Resp. Ex. L at p. 13).  In that order, the Appellate Court outlined the circumstances of Moro's case and Moro does not challenge those factual findings.  See Sanchez v. Gilmore, 189 F.3d 619, 623 (7th Cir. 1999) (under the AEDPA, "state court factual findings are presumed to be correct unless the petitioner rebuts the presumption with 'clear and convincing' evidence").

The state court found that Moro's 120-day period began to run on September 28, 1995 when he was returned to Illinois after his arrest in Washington (Resp. Ex. B at p. 5).  On January 3, 1996, two weeks prior to the expiration of the deadline, Moro filed a motion to appoint an expert to determine his sanity on the date of the offense (Resp. Ex. B at pp. 5-6).  On that day, the Trial Court granted the motion and indicated to Moro that the 120-day period was tolled due to the filing of the motion and that the delay would be attributed to him (Resp. Ex. B at pp. 6-7). The Trial Court initially indicated that it was unknown how long the delay would be and would depend on when the report was received, when the court could reasonably set a hearing on the matter, and when the court could set a subsequent trial setting (Resp. Ex. B at p. 6).  After an in-chamber's discussion, the court then indicated, on the record, that a 60 days delay would be attributable to Moro in light of the motion (Resp. Ex. B at pp. 8-9).  The report was not available on the 60th day and no motions were made by the prosecutor or Moro (Resp. Ex. B at p. 9).  The report was submitted to the court on March 18, 1996 and a hearing was held on that day in which the court attributed the entire time period, some 81 days, to Moro (Resp. Ex. B at p. 9). Thereafter, the Trial Court denied a motion to dismiss, based on the Speedy Trial Act, and Moro's trial proceeded on April 1, 1996 (Resp. Ex. B at p. 9-10).

In analyzing these facts, the Appellate Court held that Moro's criminal trial could not

proceed until an expert's report was filed (Resp. Ex. B at p. 11).  Further, the Court stated that:

> A review of the record clearly shows that the 60-day time period was not a hard-and-fast rule but was merely an estimation or a parameter of time within which the court expected the examinations and the report to be completed.  At the time that the court granted defendant's motion, it could not have foreseen that the psychologists would examine defendant on four separate occasions or that they would view a videotape, at defendant's insistence, in order to obtain all of the pertinent facts.
> When reviewing the trial judge's remarks, it is clear that his own words suggest that the 60-day time period was only a guideline, or an estimate of the time required for the psychological examinations and the preparation of the report.  The judge actually said that he did not know how long it would be before the psychologists filed their report, and he stated that he would need a reasonable time thereafter to schedule a hearing and to reschedule the trial.  He, in fact, told defendant that his trial could be delayed another 90 to 120 days, and defendant indicated that he understood.
>
> (Resp. Ex. B at pp. 11-12).

The court concluded that the time period was attributable to Moro, that Moro had not met his burden, and that the Speedy Trial Act was not violated (Resp. Ex. B at p. 12).  As such, the court later held that Moro's and Ladd's situations were not alike and that there was no error in treating them differently  (Resp. Ex. L at p. 13).

The issue before this Court, then, is whether the state courts, by reaching a different result in Ladd's case than in Moro's case, violated the equal protection clause by failing to treat alike defendants similarly.  The United States Supreme Court has stated that:

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.
>
> City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).

In this context, however, "an equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated defendants." Del Vecchio v. Illinois Department of Corrections, 31 F.3d 1363, 1386 (7th Cir. 1994) (citing Dobbert v. Florida, 432 U.S. 282, 301 (1977). The test is threefold – there must be (1) a different legal standard (2) that is applied arbitrarily (3) to similarly situated defendants. Moro's claim fails because he has not shown that the state courts acted arbitrarily. Instead, the state courts offered a reasoned explanation of the difference between Ladd and Moro based on the facts of each of the cases: in Ladd, the record was silent and the court failed to meet a scheduled hearing; in Moro, the court was not silent, was reacting to a change in circumstances, and, in fact, affirmatively acknowledged the length of delay that Moro now challenges. Ladd and Moro are not similarly situated based on these salient considerations. As such, the Illinois courts did not act arbitrarily, and thus did not offend the Equal Protection Clause, by failing to treat Ladd and Moro equally.

Instead, the state courts made decisions based on state law; decisions that this Court will not lightly re-examine. See Lechner v. Frank, 341 F.3d 635, 641 (7th Cir. 2003) (stating that "[s]tate courts are the ultimate expositors of their own state's laws and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances" (editing marks, quotations marks, and citations omitted); See also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Amended Petition for a Writ of Habeas Corpus filed by the Petitioner, John D. Moro, on November 17, 2004 be **DENIED** (Doc. 30), that this matter be **DISMISSED,** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: December 29, 2005**

> **s/ Donald G. Wilkerson**
> **DONALD G. WILKERSON**
> **United States Magistrate Judge**